IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 14-265 |
| | ) | |
| ANTRON TALLEY | ) | |
| | ) | |

## OPINION ON PRETRIAL MOTIONS

Defendant Antron Talley ("Talley" or "Defendant"), is charged in a one-count indictment for possession of firearms and/or ammunition by a convicted felon under 18 U.S.C. §§ 922(g)(1) and 924(e) and 2. On March 11, 2015 the Court conducted a hearing in which it allowed *Talley* to proceed in this case on a *pro se* basis with Attorney Jay Finkelstein as standby counsel. Following the hearing Talley submitted three pretrial motions: A Motion to Proceed Pro Se [ECF No. 34], which the Court promptly granted [ECF No. 36], a Motion for Discovery [ECF No. 32], and a Motion to Suppress Statements/Motion for Franks Hearing [ECF No. 33]. On March 31 the Government Responded to Talley's pending Motions [ECF Nos. 42 and 43]. On that same day Talley filed a Motion to Dismiss Count 1 of the Indictment on Jurisdictional Grounds [ECF No. 41]. The Government Responded to the Motion to Dismiss on April 14, 2015 [ECF No. 45].

### I. Motion for Production of Discovery Materials [ECF No. 32]

Talley seeks production of a variety of materials pursuant to either Rule 16 or as exculpatory material under Brady v. Maryland, 373 U.S. 83 (1963), and potential impeachment material under Giglio v. United States, 405 U.S. 150, 154 (1972). More specifically, in his Motion for Discovery, Talley requests: Photographs of the back door located at 1414 E. Carson

1

Street, Pittsburgh, PA; photographs of steps leading to the back door at the same location; full names of all the United States witnesses; Grand Jury Testimony by Donald King, III and Zachary Hnesh; any promises of immunity, leniency or preferential treatment made by any agent of the Government to Donald King, III; copies of the telephone call history between Sergeant Stephen Matakovich and Zachary Hnesh on August 28, 2013; copies of the telephone call history between Sergeant Stephen Matakovich and Anastasios Makripodis on August 28, 2013; a thorough inspection and certified copies of all reports manufactured by Sergeant Stephen Matakovich; and inspection and copies of the scientific test, deoxyribonucleic acid ("DNA") extraction of black syncron gloves and silver tattoo gun that were recovered from the apartment at 1414 E. Carson Street, Pittsburgh, PA. The Government's general response to Talley's Motion is that it has produced all the information it is required to produce at this time under Rule 16 [ECF No. 42 at 13].

As succinctly stated by the appellate court in United States v. Ramos, 27 F.3d 65 (3d Cir. 1994):

> [c]riminal pretrial discovery is, of course, vastly different from discovery in civil cases. In contrast to the wide-ranging discovery permitted in civil cases, Rule 16 of the Federal Rules of Criminal Procedure delineates the categories of information to which defendants are entitled in pretrial discovery in criminal cases, with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution. The Jencks Act requires that after each government witness has testified on direct examination, the government must produce to the defense "any statement" made by the witness which relates to his or her testimony. In Brady, the Supreme Court held that due process required that the government produce all "exculpatory" evidence, which includes both "[m]aterials ... that go to the heart of the defendant's guilt or innocence and materials that might affect the jury's judgment of the credibility of a crucial prosecution witness." United States v. Hill, 976 F.2d 132, 134-35 (3d Cir.1992).

Ramos, F.3d. at 67-68; see also United States v. Bagley, 473 U.S. 667, 675 (1985) ("the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose

2

evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial").

Unless Rule 16(a)(1) provides otherwise, "this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed.R.Crim.P. 16(a)(2). "Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500 [(the Jencks Act)]." Fed.R.Crim.P. 16(a)(2). The Jencks Act provides in relevant part as follows:

> (a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.
>
> (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.
> . . . .

18 U.S.C. § 3500(a) & (b).

The Government has the additional obligation, under Brady, to produce exculpatory evidence which includes evidence that goes to the defendant's guilt or innocence or evidence which might alter the jury's impression of a witness. The evidence is "material" when it is reasonably probable that, "had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). Brady evidence must be disclosed "in time for its effective use at trial." United States v. Higgs, 713 F.2d 39, 44 (3d Cir. 1983).

3

The Government states in its Response that it is currently unaware of any exculpatory Brady material. However, should the Government obtain evidence that would fall under this category it would produce the material to the Defendant as soon as practicable to enable a fair and just trial [ECF No. 42 at 5]. The Government agrees to turn over any Rule 16 material, Brady or Giglio material up to 7 days before trial [ECF No. 42 at 13].

With regard to Talley's requests pertaining to potential witnesses of the Government, the Jenks Act protects discovery of such witnesses' statements "until [such witness] has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). The Government acknowledges that a strict adherence to the dictates of the Jenks Act would cause delays at trial and agrees to voluntarily turn over Jenks Act materials earlier than what is required by statute [ECF no. 42 at 13].

On the other hand any inducements or rewards given to government witnesses, including but not limited to money, grants of immunity, plea bargains, promises of leniency or recommendations thereof, or preferential treatment, would fall under impeachment evidence that must be disclosed under Brady/Giglio. See United States v. Higgs, 713 F.2d 39, 43 (3d Cir. 1983) ("[e]vidence that government witnesses have been granted immunity and/or leniency for their cooperation is clearly relevant on the issue of their credibility"); see also United States v. Bledsoe, 2006 WL 3098770, *2 (Oct. 30, 2006) (Cercone, J.) (footnote omitted) ("[a]s a general matter, a defendant's requests for impeachment material such as the criminal records of and promises or inducements made to prospective government witnesses raise issues under Brady and the Jenks Act"). Therefore, the Government is required to provide the defense with any information relating to any inducements or rewards given to government witnesses, including but not limited to money, grants of immunity, plea bargains, promises of leniency or

recommendations thereof, or preferential treatment. Said information, to the extent that it exists and has not already been produced, shall be produced to the defense no later than one week prior to trial.

To the extent Defendant requests disclosure of information as to statements of Government Witnesses we note that there is no basis upon which the court can order the Government to provide such information prior to the time a witness has testified on direct examination at trial. We do, however, encourage the Government to provide the defense with Jencks Act materials in time to avoid any delays during trial.

Talley asserts that fingerprint reports were withheld by the Allegheny County District Attorney's Office [ECF No. 33 at 6]. The Government states it previously and timely provided the fingerprint reports in its possession to Talley and as such Talley does not allege any violation by a federal employee or under federal law [ECF No. 43 at 11]. The Court denies Tally's request as moot and otherwise grants the Motion insofar as the Government has complied with the request. Further, the Government has indicated that the "tattoo gun" found at the scene is not of interest to the Government's investigation and, therefore, it has not obtained any forensic evidence on the "tattoo gun." If forensic evidence of the "tattoo gun" is of interest to Talley he must obtain that data through proper means. The same stands true for DNA evidence of the black gloves found at the scene. The Court denies Talley's request for fingerprint records of the "tattoo gun" and DNA evidence of the black gloves as moot and otherwise grants the request insofar as the Government has complied with the request.

It is our understanding that to date Government has produced all the evidence it intends to use at trial with the exception of witness statement information. The Government indicates that it has not taken, nor does it intend to take, photographs of the back door and steps, therefore,

the Government need not produce those photographs to the Defendant. With regard to the phone records, the Government indicates that it does not have the phone records Talley requests nor does it intend to use such records at trial.[1] This being the case, the Government need not acquire or produce said records for Defendant. The same reasoning lends itself to the inspection of reports by Sergeant Stephen Matakovich as well as the DNA testing of the gloves. If the Government does not have this information, nor does it intend to obtain this information for its case, then it need not produce these items for Talley. Should the Defendant desire such information it is incumbent upon the Defendant to obtain those records or data without the assistance of the U.S. Attorney. To the extent this request seeks information beyond the scope of Rule 16, such as information that the Government has not procured, the Motion is denied. Otherwise the Motion is granted insofar as the Government has complied with such requests.

## II. Motions to Suppress Statements/Franks Hearing [ECF No. 33]

Talley, in his Motion, challenges the truthfulness of various statements made in the affidavit to obtain the arrest warrant [ECF No. 33 at 1]. The basis for Talley's Motion is that the affiant, Daniel Soroczak,[2] did not observe first-hand the factual allegations in the affidavit and, therefore, the affidavit is false. A Franks Motion asks the court to consider whether a law enforcement officer deliberately or recklessly included a false statement in his search warrant affidavit and also determine that the affidavit would not establish probable cause if the allegedly false information is corrected. See Franks v. Delaware 438 U.S. 154 (1978). The defendant

---

[1] This argument was also put forth in Talley's Motion to Suppress Statements/Franks Hearing [ECF No. 33]. In the Government's response to this Motion to Suppress it indicates that Talley was provided with a copy of the Government's subsequent request to 911 and 911's response providing the 911 documentation [ECF No. 43 at 14]. As such the Court grants Talley's motion to the extent that the Government has provided the materials it was able to obtain.

[2] We note that the officer signing the affidavit is not Daniel Soroczak and, therefore, Talley's argument is called into question. However, we will nonetheless address the issue.

6

must make a substantial preliminary showing that (1) the affiant "knowingly and intentionally, or with reckless disregard for the truth," made false or misleading statements in the warrant affidavit; and (2) demonstrate that these statements were "material," that is necessary to the finding of probable cause. See Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997). Only when both factors are proven does the Fourth Amendment require exclusion of the fruits of the search (incident to arrest in this case). See United States v. Frost, 999 F.2d 737, 742-43 (3d Cir. 1993).

In his Motion, Talley does not assert that the facts in the affidavit were false simply that the affiant did not make the observations himself [ECF No. 33 at 2]. However, in Talley's Reply [ECF No. 46] he states that the Court and U.S. Attorney should infer that he is claiming the affidavit is false. Talley argues that the officer entering the apartment never corroborated the factual assertions of the affidavit. A substantial preliminary showing is required in order "to prevent the misuse of a veracity hearing for purposes of discovery or obstruction." Franks, 438 U.S. at 170. A defendant must allege perjury or reckless disregard for the truth and provide accompanying offers of proof; i.e., he should provide a statement of supporting reasons as well as affidavits or otherwise reliable statements of witnesses. See id. at 171. "[The defendant] should point to the specific portions of the affidavit claimed to be false." Id. "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." Id.

While we agree with Talley that if the facts of the affidavit were proven to be false it could lead to an insufficiency of probable cause for the arrest and the search incident to the arrest, we do not believe that he has satisfied the first prong for a Franks Hearing. Namely, "There is, of course, a presumption of validity with respect to the affidavit supporting the [arrest] warrant."

7

Id. Talley never substantiates his accusation that the facts are wrong in the affidavit with any reliable source.

Talley makes the following allegation is in his Reply [ECF No. 46 at 4]: "The affiant could not have located any type of evidence in a bedroom that was already searched and secured by another officer, who did not observe or locate any object in said bedroom." However, this is simply a speculative blanket statement with no corroborating factual evidence to support it. We cannot base our decision on Talley's speculation as to what facts he believes to be wrong. Talley must set forth his argument with specificity to enable the Court to evaluate the claim under the Franks elements. As pled, the Court cannot determine what part of the affidavit is claimed to be false, the Court has no basis on which to find it false, and, therefore, the Court cannot make any kind of judgment for the potential of the officer making a deliberate false statement or if that statement would be material to the warrant. The Court denies Talley's request for a Franks Hearing.

We understand that Talley claims there are four (4) reports written by Sergeant Stephen Matakovich and he requests inspection and certified copies of these reports [ECF No. 33 at 5; ECF No. 46 at 5]. Talley believes Matakovish made false claims in these reports about Talley's statements [ECF No. 46 at 5-6]. Talley, however, neither attaches the reports, nor provides a basis upon which he knows there are four reports. We grant Talley's Motion with regard to production of the police reports that exist. To the extent the Government has produced all known reports by Matakovish or other officers Talley's motion is denied as moot.

Finally, Talley challenges "false statements that Donald King ("King") has allegedly made to the Government against the Defendant." [ECF no. 33 at 8] Talley references letters from King in his possession that he claims will prove the untruthfulness of King's statements to the

Government. The Government stated that because Talley did not include King's letters in his Motion it is unable to fully respond [ECF No. 43 at 11]. Furthermore, Talley does not provide any specific information as to the "false statements" to be suppressed. That being said, again, Talley's accusations lack specificity leaving the Court unable to make an informed judgment. The Court denies any Motion to Suppress related to this matter. Furthermore, King's statements are protected under the Jenks Act as a potential Government witness at trial.

Related to this matter, we agree with the Government that Grand Jury testimony of Government witnesses is protected by the Jenks Act and shall not be disclosed to the Defendant with the exception of exculpatory evidence or impeachment evidence as defined by Brady/Giglio. That being said, the Court denies Talley's motion for grand jury testimony of Donald King and Zachary Hnesh. In addition, the Court orders the Government to produce the grand jury testimony of Donald King and Zachary Hnesh to the Court for an *in camera* review to determine whether the grand jury testimony contains evidence that is discoverable under Brady/Giglio.

### III. Motion to Dismiss Count I [ECF No. 41]

In Talley's final motion, he argues that the charge against him for possession of firearms and/or ammunition by a convicted felon should be dismissed for lack of jurisdiction. We believe Talley is not arguing a jurisdictional argument, the Court clearly has jurisdiction over the federal crime for which Talley is indicted. Instead, we believe Talley is arguing that the Government cannot provide the elements of the crime. In his motion, Talley provides two arguments for dismissal. The first argument is that he was not in "possession" of the gun; the second argument is that the gun did not "affect interstate commerce." Talley draws these two arguments from the elements of the crime that must be proven by the Government:

In order for the crime of Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1), to be established, the government must prove all of the following essential elements beyond a reasonable doubt:

1. That the defendant has been convicted of a felony, that is, a crime punishable by imprisonment for a term exceeding one year;
2. That after this conviction, the defendant knowingly possessed a firearm as described in the Indictment; and
3. That the defendant's possession was in or affecting interstate or foreign commerce.

In the Government's Response [ECF No. 45], it provides the Government's burden of proving possession is proving that the firearm is "within the person's control." We agree with the Government that it does not have to prove acquisition of the firearm by the defendant to prove "possession" of the firearm by the defendant. Therefore, we find Talley's argument regarding "possession" meritless and the Government has met its burden of proof. With regard to Talley's argument that the Government has not proven that the gun affects interstate commerce, Talley again relies on an argument that does not comport with case law or standards set by the Third Circuit. According to case law, the gun simply must travel in interstate commerce at some point in the past to be sufficient to satisfy the interstate commerce element. See United States v. Singletary, 268 F.3d 196, 205 (3d Cir. 2001). In this case, the affidavit states the pistols and ammunition were not manufactured in Pennsylvania [ECF No. 1-1] but yet were found in an apartment in Pennsylvania. Therefore, this prong of the elements of the crime is satisfied as well. As such, we deny Talley's Motion to Dismiss.

## IV. Conclusion

Having reviewed the Defendant's and the Government's arguments with regard to discovery the Court makes the following rulings:

1. The Court GRANTS the Defendant's Motion as to any Rule 16 or Brady/Giglio materials requested and not yet produced by the Government. These items shall be produced to the Defendant as soon as practicable but no later than seven (7) days before trial. This includes any impeachment or exculpatory evidence. It would also include any photographs, DNA or fingerprint data, police reports, and telephone records that the Government has obtained in investigating the case. It does not include any items requested by the Defendant, which the Government has not obtained in the course of its investigation.

2. The Court DENIES the Defendant's Motion with regard to names of Government witnesses or witness statements. This discovery is protected under the Jenks Acts and is not required to be produced until after the witness has testified at trial. There is no basis upon which the court can order the Government to provide such information as Jencks material prior to the time a witness has testified on direct examination at trial. We do however encourage the Government to provide the defense with Jencks Act materials in time to avoid any delays during trial.

3. The Court Orders that the Government provide the Grand Jury Testimony of Donald King, III and Zachary Hnesh to the Court within two weeks of this Order to perform an *in camera* review to determine if Brady/Giglio exculpatory or impeachment material is discoverable within said testimony.

4. The Court DENIES Defendant's Motion to Dismiss, with prejudice.

5. Trial is set for May 26, 2015.

April 21, 2015
Date

Maurice B. Cohill, Jr.
United States District Judge

11